[Civ. No. 20322. First Dist., Div. Three. Sept. 28, 1962.]

WILLIAM P. SCOTT, JR., et al., Plaintiffs and Appellants, v. HARRY LEE et al., Defendants and Respondents.

George O. Bahrs and Robert J. Scolnik for Plaintiffs and Appellants.

William Lincoln Ferdon for Defendants and Respondents.

DRAPER, P. J.—This appeal presents the question whether the by-laws and bid depository rules of a voluntary trade association constitute a contract among its members, enforceable by one member against another.

Associated Plumbing Contractors of San Mateo County, Inc. is a voluntary nonprofit trade association of plumbing and heating contractors. Its by-laws declare its purposes to be "the advancement of sanitation," "education of the members of the craft" and of apprentices, "establishment of harmonious and equitable relations" between master plumbers and those with whom they deal, and like general and laudatory objectives. In 1955, the association adopted bid depository rules, which provide that one intending to bid to a general contractor for a plumbing and heating subcontract shall register with the designated bid depository and shall file a sealed copy of his bid at least four hours before opening of bids on the general contract. The by-laws provide for expulsion, suspension or fine as penalty for violation. The announced aim of the depository rules is to eliminate participation by subcontractors in "bid peddling," a process by which the general contractor, before submitting his own bid, calls bidders for the subcontract, advises them of the lowest subcontract bid he has received, and seeks a bid below that low figure.

On joining the association, each member signed a pledge of "my sacred word and honor," "on my honor as a man," to

abide by the rules and by-laws, to "endeavor by all just and honorable means, to foster a kindly spirit between members," and to "deport myself in such a manner as is expected of members of all respectable organizations."

Defendant is a long-time member of the association, who had helped draft the bid depository rules, and who abided by them until the incident here involved. In late 1957, he bid to a general contractor for the plumbing and heating work on additions to the buildings of Sequoia Hospital District. He registered with the bid depository as a prospective bidder. He was unable to complete his bid until less than four hours before opening of bids on the general contract because the bid to him by a sheet metal contractor was delayed. Solely because of this delay, defendant was unable to file a duplicate of his bid with the bid depository within the required time and thus did not file at all. He did, however, submit his bid to a general contractor, who was awarded the contract and in turn awarded the plumbing and heating subcontract to defendant. Defendant has performed the contract.

Plaintiff was not a member of the association, but did belong to a like San Francisco organization, to which the San Mateo group had offered the use of its bid depository facilities. Plaintiff's bid to the same general contractor for the same subcontract was $5,000 higher than that of defendant on a total bid of some $900,000. Plaintiff protested to the association. Its directors, sitting as a fair trade practice committee, held a hearing and declared that plaintiff was "the low registered bidder." No penalty, however, was levied against defendant. This action for compensatory and exemplary damages followed. After trial to the court sitting without a jury, judgment was for defendant. Plaintiff appeals.

Plaintiff first contends that the by-laws and bid depository rules of the association constitute an enforceable contract by each member with all others. For this view he quotes language to the effect that the by-laws of a corporation constitute a contract among its shareholders (e.g. *Saline Valley Salt Co.* v. *White,* 177 Cal. 341, 346 [170 P. 820]; *Lum* v. *American Wheel etc. Co.,* 165 Cal. 657, 664 [133 P. 303, Ann.Cas. 1915A 816]; *Casady* v. *Modern Metal etc. Mfg. Co.,* 188 Cal.App.2d 728, 732-733 [10 Cal.Rptr. 790]). But none of the cases relied on was an action by one shareholder against another. The true holding in each case was that the by-laws fixed the rights and duties of the corporation against and to its shareholders. The references to by-laws as a contract among share-

holders are but dicta. More nearly analogous are the decisions holding that the by-laws of a voluntary nonprofit organization constitute a contract between the association, on the one hand, and its members on the other, fixing the right to continued membership (*Smith* v. *Kern County Medical Assn.*, 19 Cal.2d 263 [120 P.2d 874]; *Lawson* v. *Hewell*, 118 Cal. 613 [50 P. 763, 49 L.R.A. 400]).

It is doubtless true that parties may, as among themselves, assume a contractual obligation to comply with the by-laws and rules of a voluntary association. Whether the by-laws themselves constitute such an agreement turns on whether the elements of a contract are present. Mutual consent is an essential element of a contract (Civ. Code, § 1550).

While a positive intention to contract is not essential (1 Williston on Contracts (3d ed.) 37), a "manifestation of mutual assent" is required (*id.* 31). When the party asserting a contract should reasonably understand from the circumstances that the other had no intention to contract, the engagement of the latter normally is not enforced. (*Id.* 44.)

By-laws and rules which on their face negate assent to contractual obligation to other members certainly cannot be held to establish an enforceable contract. We think that is the situation here. In both by-laws and rules there is a significantly meticulous avoidance of reference of any obligation among members. Rather, each obligation assumed by an individual member is to the association, as distinguished from its members. The remedies of the association, in turn, are restricted to suspension, expulsion and fine of the member. This entire appearance of noncontractual pledge is accentuated by the form of the document signed by each member on joining the association. It is much more closely related to the fraternal oath than to the business agreement. The pledge is "on my sacred word and honor," and "on my honor as a man," phrases which, cynically or not, have come to be construed as expressing "moral obligation" as distinguished from business agreement. In the by-laws and rules, as a whole, we fail to find consent, assent or intent to contract with other members. We find only an agreement with the association, liability under which is limited to suspension, expulsion or fine. Thus there is no contract enforceable by one member against another.

In view of this conclusion, it is unnecessary to consider plaintiff's assertion that although not a member of the associ-

ation, he is a third-party beneficiary of the claimed contract among the members.

 Plaintiff also asserts a cause of action for tortious unfair competition. This is based upon evidence that, less than an hour before opening of bids of general contractors, an unsuccessful bidder for the general contract telephoned plaintiff, said that defendant's bid for the subcontract was low, and gave plaintiff an opportunity to meet that bid. Plaintiff refused to do so, assertedly because he had learned of defendant's registration with the bid depository, and his consequent assumption that defendant had by then complied with the requirement that it file with that depository a duplicate of its bid. The claim is that defendant's registration constituted a representation to plaintiff that he would so comply, and that this representation was made to induce inaction by plaintiff. But there is evidence that the rules prohibited disclosure of the names of registered bidders before actual opening of bids. Thus there is no evidence that defendant's registration amounted to a representation to plaintiff or any other bidder, and the court so found. The argument appears untenable in other respects, which need not be discussed since the foregoing disposes of the contention.

We note that some types of bid depository rules may be of questionable validity under federal anti-trust legislation (58 Mich.L.Rev. 497), and that like questions may arise under California legislation on the same subject. Conceivably, questions of conflict with the policy favoring competitive bidding upon public work might also be raised. No such question is discussed in the briefs or determined by this opinion.

Judgment affirmed.

Salsman, J., and Devine, J., concurred.